# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SERENE DUDHI, | CIVIL ACTION |
| Plaintiff, | |
| v. | No. 18-3514 |
| TEMPLE HEALTH OAKS LUNG CENTER and TEMPLE UNIVERSITY HEALTH SYSTEM, INC., | |
| Defendants. | |

## **MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                             **FEBRUARY 4th, 2019**

      Plaintiff Serene Dudhi ("Dudhi") brings this action against Defendants Temple Health Oaks Lung Center ("Temple Health") and Temple University Health System, Inc. ("TUHS") alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a) *et seq.*, the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k) *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 *et seq.*, and the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*

      Defendants move to dismiss the Complaint contending that Dudhi fails to state a claim upon which relief can be granted. Dudhi has filed a Memorandum of Law in Opposition to Defendants' Motion to Dismiss. For the reasons noted below, Defendants' Motion is granted in part and denied in part.

I. **BACKGROUND**[1]

In April 2014, Defendants hired Dudhi as a medical assistant for their Oaks, Pennsylvania location, where she had been working as a temporary employee for approximately a year and a half. (Compl. ¶ 10.) At the time of her hire, Dudhi was the only African-American employee in the Temple Oaks office. (*Id.* ¶ 11.) In mid-2016, Defendants underwent a management change, and Dudhi came under the management of Karen Kirch ("Kirch"), a Caucasian woman. (*Id.* ¶ 12.)

In February 2017, Dudhi took approved FMLA leave so she could give birth to her child. (*Id.* ¶ 13.) Dudhi returned to work in May 2017. (*Id.* ¶ 14.) Upon her return to work, Dudhi explained to Kirch and the office manager that she was breastfeeding her newborn and would require a break during the day to express milk. (*Id.* ¶ 15.)

Allegedly, no private area was available and/or provided to Dudhi to pump breast milk. (*Id.* ¶ 16.) As a result, Dudhi was forced to pump wherever she could, usually using an empty office or, occasionally, her car. (*Id.* ¶¶ 17–18.) However, while pumping, Dudhi would be interrupted by both male and female employees due to the lack of privacy and despite letting the office manager know that she was taking a break to pump. (*Id.* ¶ 19.)

On June 29, 2017, Dudhi was working her shift with two other medical assistants. (*Id.* ¶ 20.) She advised one of the other medical assistants that she was going on break to pump and would return shortly. (*Id.* ¶ 21.) As there was nowhere else to go, Dudhi went to the parking lot and sat in her car to pump. (*Id.* ¶ 22.)

---

[1] We take the facts alleged in the Complaint as true, as we must when deciding a motion under Federal Rule of Civil Procedure 12(b)(6). *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (citation omitted).

However, upon her return to the office, Dudhi was told that the doctors were looking for both her and one of the other Caucasian, temporary medical assistants. (*Id.* ¶ 23.) Kirch then fired Dudhi because of the doctors' inability to locate her within the building. (*Id.* ¶ 24.) However, Dudhi asserts that the Caucasian temporary medical assistant, who was also unable to be found, was not reprimanded or written up, but rather given Dudhi's position after her termination. (*Id.* ¶ 25.)

Dudhi exhausted her administrative remedies pursuant to the Equal Employment Opportunity Act and the PHRA. (*Id.* ¶ 10.) Dudhi then timely filed suit in this Court following the receipt of her right-to-sue letter. (*Id.*, Ex. A.)

## II.     LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). In deciding a motion to dismiss under Rule 12(b)(6), courts must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (quoting *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014)) (internal quotation marks omitted). However, courts need not "accept mere[] conclusory factual allegations or legal assertions." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016) (citing *Iqbal*, 556 U.S. at 678–79). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*, 550 U.S. at 555.

Finally, we may consider "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents." *Davis*, 824 F.3d at 341 (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)) (internal quotation marks omitted).

## III. DISCUSSION

Defendants move to dismiss the complaint in its entirety. (Defs.' Mem. Law in Supp. Mot. to Dismiss 1.) Defendants argue that: (1) Dudhi's claim of discrimination under the PDA must be dismissed on the grounds that it is duplicative of her claim of sex discrimination under Title VII; (2) Dudhi failed to state a claim of discrimination based on race or gender under Title VII and the PHRA in Counts I and III; (3) Dudhi failed to state a claim that she was terminated because she exercised FMLA rights; and (4) all counts against TUHS should be dismissed as Dudhi has failed to establish TUHS was her employer. (*Id.* 1–2.)

We address these arguments in this order.[2]

### A. Dudhi's Claim of Discrimination under the Pregnancy Discrimination Act in Count II is Duplicative and Must Be Dismissed

Defendants argue that discrimination based on pregnancy or related medical conditions is "evaluated under the same framework as other intentional sex discrimination cases under Title VII." (Defs.' Mem. Law in Supp. Mot. to Dismiss 12.) Thus, because Dudhi asserts a claim for sex discrimination in Count I, the pregnancy discrimination claim in Count II should be dismissed as duplicative. (*See id.*) We agree.

---

[2] Dudhi asks for an opportunity to file an Amended Complaint "to further clarify the causes of action" if any of her claims are deemed insufficient. (Pl.'s Mem. Law in Opp'n Mot. to Dismiss 5–6.) Amendments should be freely permitted; however, district courts may appropriately consider whether such amendments would cause undue delay, undue prejudice to the opposing party, or be futile. *See Averbach v. Rival Mfg. Co.*, 879 F.2d 1196, 1203 (3d Cir. 1989). We apply this standard to the claims brought by Dudhi.

4

"The Pregnancy Discrimination Act amended Title VII of the Civil Rights Act of 1964 to combat systemic workplace discrimination against women because of their reproductive capacity. Congress drafted the PDA to frame pregnancy discrimination broadly in pursuit of . . . protect[ing] women 'before, during, and after' pregnancy." Jill E. Habig, Comment, *Defining the Protected Class: Who Qualifies for Protection under the Pregnancy Discrimination Act?*, 117 Yale L.J. 1215, 1215 (2008) (quoting 124 Cong. Rec. 38,573 38,574 (1978)). The PDA provides, in relevant part:

> The terms of "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected by similar in their ability or inability to work.

42 U.S.C. § 2000e(k) (1994).

Moreover, "[r]ather than introducing new substantive provisions protecting pregnant women, the PDA brought discrimination on the basis of pregnancy within the existing statutory framework prohibiting sex-based discrimination." *Solomen v. Redwood Advisory Co.*, 183 F. Supp. 2d 748, 751–52 (E.D. Pa. 2002) (quoting *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1312 (11th Cir. 1994)).

This issue was previously addressed in *Galezniak v. Millville Health Ctr.*, No. 11-1719, 2012 WL 140220 (M.D. Pa. Jan. 18, 2012), a case from the United States District Court for the Middle District of Pennsylvania and cited extensively by both Dudhi and Defendants. There, the plaintiff alleged one count of discrimination based on sex in violation of Title VII and one count of discrimination because she was pregnant in violation of the PDA. *See id.* at *4. Because the underlying basis of each discrimination claim was the plaintiff's pregnancy, the court found that the two counts were identical. *See id.* (citing *Marzano v. Comput. Sci. Corp.*, 91 F.3d 497, 506

(3d Cir. 1996)) ("Because pregnancy discrimination is a form of sex discrimination, and not an independent type of discrimination, the claims are duplicative and the [PDA claim] must be dismissed.").

Similarly, the underlying discrimination in Dudhi's Title VII and PDA claims is her pregnancy. (*Compare* Compl. ¶¶ 32–34, 38 ("Plaintiff's status as a pregnant woman . . . [and] a nursing mother places her in a protected class. . . . Plaintiff's membership in a protected class was a motivating factor in Defendants' decision to terminate Plaintiff's employment."), *with* Compl. ¶ 46 ("Defendants' conduct in terminating Plaintiff was a result of her pregnancy . . . .").)

Therefore, Counts I and II are duplicative. Defendant's Motion to Dismiss is granted to the extent it seeks to dismiss Dudhi's claim of discrimination under the PDA. Accordingly, Count II of the Complaint is dismissed with prejudice.[3]

### B. Dudhi Properly Pleads Claims of Race Discrimination and Sex Discrimination under Title VII

#### 1. Race Discrimination

Next, Defendants move to dismiss Dudhi's claim of race discrimination under Title VII and the PHRA.[4] (Def.'s Mem. Law in Supp. Mot. to Dismiss 8–11.) "In order to overcome a motion to dismiss . . . , [a plaintiff] has the burden of pleading sufficient factual matter that permits the reasonable inference that [she] was terminated or retaliated against because of her race, sex, and/or national origin." *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702 (3d Cir.

---

[3] We find that an opportunity to amend this duplicative claim is not warranted on the grounds that it would be futile. *See Averbach*, 879 F.2d at 1203.

[4] Claims brought under Title VII and the PHRA are analyzed under the same framework. *See Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083–84 (3d Cir. 1995) (citing *Chmill v. City of Pittsburg*, 412 A.2d 860, 871 (Pa. Super. 1980);) ("[Title VII] and the [PHRA], prohibit discrimination in employment based on race or national origin. The state Act is construed consistently with interpretations of Title VII.")

6

2010) (citing *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 318–19 (3d Cir. 2000)); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–12 (2002) (classifying prima facie case as an evidentiary standard not required to survive a motion to dismiss). A plaintiff may demonstrate such inference through multiple means, including: (1) comparator evidence; (2) evidence of similar racial discrimination of other employees; or (3) direct evidence of discrimination from statements or actions by her supervisors suggesting racial animus. *See Golod*, 403 F. App'x at 702 n.2 (citing *Swierkiewicz* 534 U.S. at 510–11).

In her Complaint, Dudhi asserts that she was fired from her position as a medical assistant after doctors were unable to find her while she was expressing milk in her car. (Compl. ¶¶ 23–24.) However, during that same period of time, a fellow, Caucasian medical assistant was also unable to be located, but was not fired. (*Id.* ¶¶ 23, 25.)

Defendants argue that the paragraphs in Dudhi's Complaint concerning the lack of disciplinary action against the Caucasian medical assistant are insufficient to place Dudhi's claim "into the realm of plausibility" because they lack adequate factual details consistent with defendants' liability. (Defs.' Mem. Law in Supp. Mot. to Dismiss 8–9 (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 133 (3d Cir. 2010)).) In support, Defendants cite two cases where discrimination claims were dismissed due to a complete lack of factual assertions and could not establish that there was differential treatment of a member of a protected class. (*See id.* 8–9 (citing *Biddle v. Grandview Hosp.*, No. 14-6614, 2015 WL 1293211, at *4 (E.D. Pa. Mar. 20, 2015) ("dismissing race discrimination claim where complaint was 'wholly devoid of any facts giving rise to a reasonable inference that [plaintiff] was terminated because of his race'"); *Danao v. ABM Janitorial Servs.*, No. 14-6621, 2015 WL 2378644, at *11 (E.D. Pa. May 19, 2015) ("dismissing race discrimination claims against union where plaintiff 'cite[d] to no facts

whatsoever—from which racial discrimination may be inferred' and complaint lacked any factual details describing how similarly situated Caucasian members were allegedly treated more favorably")).)

However, Dudhi's burden at this stage is not intended to be onerous. *See Marzano*, 91 F.3d at 508; *see also Swierkiewicz*, 534 U.S. at 511 (rejecting "the argument that a Title VII complaint requires greater 'particularity,' because this would 'too narrowly constric[t] the role of the pleadings'" (emphasis original)). "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swirkiewicz*, 534 U.S. at 511 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Therefore, taking the facts in Dudhi's Complaint as true, as we must in deciding a motion to dismiss, we find Dudhi successfully asserts facts demonstrating differential treatment between her and a member of a non-protected class.

Dudhi states that the Caucasian medical assistant was absent during the same period of time Dudhi was in her car. (Compl. ¶ 23.) Upon Dudhi's return, she learned that the doctors were looking for both her and the Caucasian medical assistant. (*Id.* ¶ 24.) Yet, only Dudhi was fired by Kirch, while the Caucasian medical assistant was not. (*Id.* ¶¶ 24–25.) Thus, the Complaint clearly infers that Dudhi was treated less favorably than a similarly-situated employee because of her race.

To that point, however, Defendants further contend that the Caucasian medical assistant is not a proper comparator to Dudhi because he or she was a "temporary employee," and, therefore, not "similarly situated" to Dudhi, who was a full-time employee. (*See* Defs.' Mem. Law in Supp. Mot. to Dismiss 10.) In order for a plaintiff to present a proper comparator, she must prove "that the relevant aspects of the plaintiff's employment situation are 'nearly

identical' to those of the co-workers that plaintiff alleges were treated more favorably." *See Collins v. Kimberly-Clark Pa., LLC*, 247 F. Supp. 3d 571, 589 (E.D. Pa. 2017) (quoting *Hobson v. St. Luke's Hosp. & Health Network*, 735 F. Supp. 2d 206, 214 (E.D. Pa. 2010)). "A determination of whether employees are similarly situated takes into account factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in." *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011) (citing *Lee v. Kansas City S. Ry. Co.*, 574 F. 3d 253, 260 (5th Cir. 2009); *Russell v. Univ. of Toledo*, 537 F.3d 596 (6th Cir. 2008); *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744 (7th Cir. 2006)); *see also Collins*, 735 F. Supp. 2d at 589–90 (stating similarly situated employees "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them").

"If the 'difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer,' the employees are not similarly situated for the purposes of an employment discrimination analysis." *Lee*, 574 F.3d at 260 (emphasis added) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001)). Because Dudhi asserts that the proposed comparator was also a medical assistant at Temple Health, (Compl. ¶ 23), we are not convinced, at this stage, that the comparator's temporary status accounts for the disparate treatment. *See Collins*, 735 F. Supp. 2d at 589–90.

For these reasons, Defendants' Motion to Dismiss is denied to the extent it seeks to dismiss Dudhi's claim of race discrimination under Title VII and the PHRA.

2. <u>Sex Discrimination</u>

Defendants' Motion to Dismiss further seeks to dismiss Dudhi's claim of sex discrimination in Counts I and III. (Defs.' Mem. Law in Supp. Mot. to Dismiss 11, 13–16.)

Dudhi's factual support for this claim is nearly identical to her claim of race discrimination, discussed above, including proffering the same Caucasian, non-pregnant/nursing comparator.[5] While much of our reasoning concerning Dudhi's race discrimination claim is equally applicable to her sex discrimination claim, Defendants raise two new arguments as to why the sex discrimination claims should be dismissed: (1) Dudhi does not properly plead a sex discrimination claim on the basis of a failure to accommodate and (2) Dudhi cannot assert the employer knowledge requirement of the prima facie case of a disparate treatment claim.

      a.    *Dudhi Fails to Plead a Failure to Accommodate Claim*

Defendants initially argue that Dudhi's "entire claim appears to be premised on the fact that she was terminated after she allegedly requested, but did not receive, an accommodation to express breast milk while at work." (*Id.* at 13.) We disagree that the "entire claim" is centered around a failure to accommodate claim, but Dudhi does include a paragraph in her Complaint that states, "Defendants did not allow [Dudhi] to take breaks to pump." (Compl. ¶ 35.) She also asserts that "Defendants did not provide [her] with a private area in which to pump, nor did they honor her need to take a break to do so." (*Id.* ¶ 16.) As a result, Dudhi would cut short her lunch break, occasionally be forced to pump in her car, and be constantly interrupted by other employees. (*Id.* ¶¶ 18–19.)

In order to state a claim for failure to accommodate, a plaintiff must show that: (1) she belongs to the protected class; (2) she sought accommodation; (3) the employer did not accommodate her; and (4) the employer did accommodate others "similar in their ability or inability to work." *See Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1353–54 (2015)

---

[5] It is unclear from the Complaint whether this person is male or female, however a proper comparator in a sex discrimination claim based on the employer's pregnancy status can be female, so long as she is not pregnant or nursing. *See Marzano*, 91 F.3d at 502 (comparing plaintiff with nonpregnant workers to determine nexus between discharge and pregnancy)

(quoting 42 U.S.C. § 2000e(k)) (applying PDA to claims of failure to accommodate as form of disparate treatment).

Dudhi adequately pleads that she belongs to a protected class, that she sought an accommodation, and that Defendants refused to accommodate her. (Compl. ¶¶ 15–17.) However, she does not plead that any other employees "similar in their ability or inability to work" were afforded an accommodation. This showing is not an onerous burden and does not require that those favored and disfavored were "similar in all but the protected ways." *See Young*, 135 S. Ct. at 1354 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). However, because Dudhi does not show that any other employee received an accommodation, she cannot meet this burden and her claim must fail.

Therefore, Defendants' Motion to Dismiss is granted to the extent it seeks to dismiss Dudhi's failure to accommodate claim. The claim is dismissed without prejudice.

      b.     *Dudhi's Complaint does not Preclude the Notice Element of the Prima Facie Case for a Claim of Disparate Treatment*

Next, Defendants argue that Dudhi's claim for sex discrimination must be dismissed because she will be unable to establish the prima facie case for discrimination on the basis of her status as a nursing mother. To assert a prima facie case, a plaintiff must show that: "(1) she is or was pregnant and that her employer knew she was pregnant; (2) she was qualified for the job; (3) she suffered an adverse employment decision; and (4) there was a nexus between her pregnancy and the adverse employment decision that would allow a fact-finder to infer discrimination." *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 366 (3d Cir. 2008).

As we noted above, it is unnecessary for Dudhi to prove her prima facie case at the pleadings stage. However, Defendants argue that the facts, as pleaded in her Complaint, will preclude Dudhi from establishing that Defendants knew she was expressing milk during the

period of time she could not be found by the doctors. (Defs.' Mem. Law in Supp. Mot. to Dismiss 13–14.) In support, Defendants note that, on the day Dudhi was terminated, she had informed one of the other medical assistants on shift "that she was going on break to pump." (*Id.* at 13 (quoting Compl. ¶ 21).) Accordingly, because Dudhi never informed her supervisor that she was pumping, either before she went on break or after her return, Defendants argue they were not "aware" of her protected conduct and "cannot be held liable" on a theory of pregnancy discrimination. (*Id.* at 14 (citing *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996) (affirming dismissal of claim for pregnancy discrimination where plaintiff had not informed her employer she was pregnant at time of her termination and therefore, she was unable to establish prima facie case)).)

Employees' pregnancy status and related medical conditions protected by the PDA are often unknown to an employer. *See Geraci*, 82 F.3d at 581 (comparing pregnancy status to that of employee's religious affiliation). Therefore, unlike the vast majority of cases where "the plaintiff's membership is either patent (race or gender), or is documented on the employee's personnel record (age)," the employer's knowledge "is a critical element of the plaintiff's prima facie case" under a *McDonnell Douglas* analysis. *See id.* ("[I]t is counter-intuitive to infer that the employer discriminated on the basis of a condition of which it was wholly ignorant, and in this situation the bare *McDonnell Douglas* presumption no longer makes sense.").

Dudhi argues that she satisfied the employer notice requirement when, upon her return from maternity leave, she informed Kirch that she would need to take a break during the day to express milk for her newborn. (*See* Pl.'s Mem. Law in Opp'n Mot. to Dismiss 7; *see also* Compl. ¶ 15.) Defendants, however, appear to intimate that in order to successfully establish that her employer knew she was pumping, Dudhi should be required to inform her supervisor

each time she took a break. (Defs.' Mem. Law in Supp. Mot. to Dismiss 14 ("Dudhi has not alleged that her supervisor knew she had been pumping breast milk at the time of her termination . . . .").)

We find Defendants' interpretation of the law misses the mark and would place an undue burden on employees. *See Young*, 135 S. Ct. at 1351 (holding employers may not treat pregnant employees less favorably than nonpregnant employees); *see also* L. Camille Hébert, *The Causal Relationship of Sex Pregnancy, Lactation, and Breastfeeding and the Meaning of 'Because of . . . Sex' under Title VII*, 12 Geo. J. Gender & L. 119, 126 (2011) (arguing that if unscheduled bathroom breaks were common or allowed, it should make no difference if employee was using restroom or breastfeeding). Importantly, none of the cases cited by Defendants support such a proposition. Instead, they focus on the employer's knowledge of a plaintiff's particular characteristic. *See, e.g.*, *Geraci*, 82 F.3d at 581; *Anthony v. Duff & Phelps Corp.*, No. 09-3918, 2010 WL 3222188, at *6 (E.D. Pa. Aug. 12, 2010) ("[E]ssential to her prima facie case is evidence that the person who decided to fire Plaintiff knew of her membership in a protected class.").

Here, Dudhi clearly establishes that she informed Defendants of her status as someone who would need to express milk, a medical condition related to her pregnancy that can be considered a protected class under the PDA, upon her return from maternity leave. *See Solomen*, 183 F. Supp. 2d at 753–54 (citing *Geraci*, 82 F.3d at 581) (ensuring that pregnancy discrimination claims are brought by individuals who can reasonably claim to be affected by pregnancy, childbirth, or related medical conditions); *see also* U.S. Equal Empl. Opportunity Comm'n, EEOC Enforcement Guidance: Pregnancy Discrimination and Related Issues (June 25, 2015), 2015 WL 4162723, at *8 ("[A] practice that singles out lactation or breastfeeding for less

favorable treatment . . . is facially sex-based. For example, it would violate Title VII for an employer to freely permit employees to use break time for personal reasons except to express breast milk."). This is sufficient for Dudhi to make the case that Defendants' were aware of her medical condition.

Therefore, Dudhi is not precluded from establishing a prima facie case of sex discrimination. Defendants' Motion to Dismiss is denied to the extent it seeks to dismiss Counts I and III of the Complaint.

### C. Dudhi Fails to State a Claim of FMLA Retaliation

Defendants also move to dismiss Dudhi's claim of FMLA retaliation in Count IV. (Defs.' Mem. Law in Supp. Mot. to Dismiss 17–18.) In order to state a claim for retaliation under the FMLA, a plaintiff must allege that: (1) she took FMLA leave; (2) she suffered an adverse employment decision; and (3) that the adverse decision was causally related to the leave. *See Budhun v. Reading Hosp. Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2016). Where, as here, there is no evidence of direct discrimination, "[t]he requisite causal connection can be established by (1) the temporal proximity between the protected activity and the adverse employment action, (2) circumstantial evidence of a 'pattern of antagonism' following the protected conduct, or (3) where the proffered evidence, looked at as a whole, suffices to raise the inference." *Cortazzo v. City of Reading*, No. 14-2513, 2016 WL 1022267, at *6 (E.D. Pa. Mar 15, 2016).

In her Complaint, Dudhi clearly states that she took FMLA leave and that she suffered an adverse employment action. (Compl. ¶¶ 13–15.) However, Dudhi fails to allege a proper causal connection between the adverse action and her invocation of FMLA leave. Dudhi alleges that "at all times material, Defendants . . . were hostile to [her] need to take FMLA leave" and that "following her return to work upon completion of her FMLA leave, Defendants terminated [her]

employment." (*Id.* ¶¶ 26, 60.) However, these naked assertions are insufficient to properly support a causal connection between her leave and her termination.

Furthermore, these assertions are not supported by the other facts provided in the Complaint. In particular, Dudhi claims that she returned from FMLA leave in May 2017. However, she was not terminated until June 29, 2017, nearly two months later. (*See* Compl. ¶¶ 14, 20–24.) "Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity," courts typically consider periods of days or weeks, not months. *See Blakney v. City of Phila.*, 559 F. App'x 183, 186 (3d Cir. 2014) ("We have found that a temporal proximity of two days is unusually suggestive of causation, but have held that a temporal proximity greater than ten days requires supplementary evidence of retaliatory motive."), *LeBoon v. Lancaster Jewish Comm. Ctr. Ass'n*, 503 F.3d 217, 232–33 (3d Cir. 2007) (finding three-month gap not unduly suggestive); *see also Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283 (6th Cir. 2012) (finding three weeks unduly suggestive); *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 994 (8th Cir. 2011) (finding four days unduly suggestive); *Jalil v. Avdel Crop.*, 873 F.2d 701, 708 (3d Cir. 1989) (finding two days unduly suggestive).

The two-month gap between Dudhi's return from FMLA leave and her termination is too long to establish an unduly suggestive temporal proximity and, without more, cannot establish the necessary causal connection to sustain her FMLA retaliation claim. *See Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3d Cir. 2009) (finding time period of two months was insufficient to show retaliatory causation). As Dudhi has failed to provide any further factual allegations that would raise an inference of retaliation or a "pattern of antagonism" due to her invocation of her right to FMLA leave, her claim cannot survive Defendants' Motion to Dismiss.

15

Accordingly, Defendants' Motion is granted to the extent it seeks to dismiss Dudhi's claim of FMLA retaliation, and Count IV of the Complaint is dismissed without prejudice.

### D. Dudhi has Properly Pleaded Temple University Health System as Her Employer

Finally, Defendants move that all claims against TUHS be dismissed as Dudhi has not properly pleaded that it was her employer. (Defs.' Mem. Law in Supp. Mot. to Dismiss 2 n.2, 5–7.) Under Title VII, a plaintiff may bring suit against her "employer, employment agency, labor organization, or [in some cases a] joint labor-management committee." *Conroy v. City of Phila.*, 421 F. Supp. 2d 879, 888 (E.D. Pa. 2006) (alteration in original) (quoting 42 U.S.C. § 2000e-5). The defendant need not be the plaintiff's actual or direct employer, so long as it exercises "such a degree and range of control over the plaintiff that it is the plaintiff's *de facto* or indirect employer . . . ." *See id.* at 888–89 (quoting *Tyrrell v. City of Scranton*, 134 F. Supp. 2d 373, 380 (M.D. Pa. 2001)).

Defendants argue that Dudhi alleges that only Temple Health was her employer and does not establish an employment relationship between TUHS and Temple Health. (Defs.' Mem. Law in Supp. Mot. to Dismiss 14.) However, Dudhi asserts that Temple Health and TUHS "were acting together in the capacity of [her] employer." (Compl. ¶ 4.) Without any evidence to the contrary and reading the Complaint in the light most favorable to the Plaintiff, we find that Dudhi has plausibly pleaded that TUHS is her employer within the meaning of Title VII and the PHRA.

Accordingly, Defendants' Motion to Dismiss is denied to the extent it seeks to dismiss all claims against TUHS.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is granted in part and denied in part. Dudhi's claim of pregnancy discrimination under the PDA in Count II is dismissed with prejudice. Dudhi's claims of sex discrimination under Title VII in Count I and the PHRA in Count III are dismissed without prejudice to the extent she claims a failure to accommodate. Dudhi's claim of FMLA retaliation in Count IV is dismissed without prejudice. However, Defendants' Motion is denied to the extent it seeks to dismiss Dudhi's claim of race and sex discrimination in Counts I and III.

An appropriate Order follows.