# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SERENE DUDHI,** *Plaintiff* | : : : | **CIVIL ACTION** |
| v. | : : | |
| **TEMPLE HEALTH OAKS LUNG CENTER** *et al.,* *Defendants* | : : : : | **NO. 18-3514** |

## MEMORANDUM

PRATTER, J.                                                                                                        MARCH 2, 2020

Serene Dudhi, a medical assistant who was nursing during the time period in which she was a permanent employee at Temple Lung Center, asserts that the defendants—Temple Health Oaks Lung Center and Temple University Health System, Inc.—discriminated against her based on her race and sex. Ms. Dudhi was fired after she violated a work rule prohibiting an employee from leaving the building while caring for a patient. Ms. Dudhi's sex-based discrimination claims rest solely on her assertion that although she and her alleged comparator—a temporary, non-breastfeeding medical assistant placed at Temple Lung Center—violated the same work rule, only Ms. Dudhi immediately lost her job. Because the evidence could not support a jury finding that Mses. Dudhi and Hosten were similarly situated, Ms. Dudhi fails to meet the modest burden to establish an inference that she can establish her *prima facie* case. As for Ms. Dudhi's race-based discrimination claims, she does not oppose granting the defense summary judgment motion and, in fact, fails to set forth any evidence in support of these claims. The Court grants summary judgment in favor of the defendants.

## BACKGROUND

Ms. Dudhi, an African-American woman, worked as a permanent medical assistant at Temple Lung Center. Temple Lung Center is an unincorporated multidisciplinary program that operates in connection with the Department of Thoracic Medicine and Surgery at the University's medical school. Beth Knowles, Temple Lung Center's Office Manager, was Ms. Dudhi's immediate supervisor. Ms. Knowles, in turn, reported to Karen Kirch, the Clinical Operations Administrator.

In or around March 2017, Ms. Dudhi took parental leave for three months after giving birth. Ms. Dudhi was breastfeeding when she returned to work. Upon her return to work, Ms. Dudhi orally requested a private room to express milk.[1]

Aliyah Hosten, an African-American woman who was not breastfeeding during the time period at issue, was assigned to work as a temporary medical assistant at Temple Lung Center. Mses. Dudhi and Hosten were scheduled to work on June 26, 2017. On that day, both Mses. Dudhi and Hosten left their work areas while on-duty. Ms. Dudhi left to express milk in her car.[2] About an hour after Ms. Dudhi was scheduled to work, a doctor informed Ms. Kirch on the phone and Ms. Knowles in-person that neither Mses. Dudhi nor Hosten, the only two medical assistants working at Temple Lung Center, were in the building. When looking for the medical assistants, Ms. Knowles noticed that a medication was left spinning in an unattended centrifuge. She also

---

[1] Although the defendants dispute whether Ms. Dudhi made a legitimate request for nursing accommodations, they assume for the purposes of this motion that Ms. Dudhi requested and was denied accommodations.

[2] Although the defendants' evidence suggests that Ms. Dudhi actually left work to go to Wawa, the defendants assume for the purposes of this motion that Ms. Dudhi left work to express milk in her car.

2

encountered a patient asking for Ms. Dudhi.[3] After an unsuccessful attempt to locate Ms. Dudhi, Ms. Knowles called Ms. Dudhi and instructed her to return to work immediately. Ms. Dudhi complied.

Various work rules are enforced at the Temple Lung Center. In relevant part, Work Rule D.5 prohibits "[l]eaving an assigned work area without permission and without proper relief when responsible for patient or client care, or the security of an area or person." Def.s' Ex. 11 (Doc. No. 22-2). Ms. Dudhi admits that she did not receive permission to leave her work area.[4]

In her declaration, Ms. Knowles states that only permanent employees are subject to the work rules and the disciplinary actions prescribed to them. Temporary workers, on the other hand, are expected to follow the work rules but are not subject to their prescribed mandatory disciplinary actions. Infractions of the work rules are categorized into various categories. The disciplinary actions associated with Category D work rule violations mandate the termination of an infracting permanent employee, without respect to the employee's disciplinary record. Because at-issue Work Rule D.5 falls into Category D, the disciplinary actions set forth mandate the termination of a permanent employee who leaves the work area without permission while caring for a patient.

After the incident, Mses. Knowles and Kirch consulted Temple University's Director of Labor Relations, Deirdre Culbreath-Walton. Ms. Culbreath-Walton informed them that Ms.

---

[3] In her response to the Defendants' Statement of Undisputed Facts, Ms. Dudhi denies that Ms. Knowles encountered any patients but does not cite any relevant evidence to support such an assertion. Specifically, Ms. Dudhi cites only her deposition testimony stating that she allegedly told Ms. Hosten that she was going to take a break to express milk. This evidence, however, in no way pertains to whether Ms. Knowles encountered a patient. Regardless, Ms. Dudhi's briefing and presentation at oral argument demonstrate that she does not challenge summary judgment on the basis that she did not violate the work rule at issue.

[4] She instead insists that she told Ms. Hosten to watch her work area while she went to her car, and that it was not typical to request permission to leave the work area. Neither party sets forth any argument that such a distinction is relevant for conducting this summary judgment analysis.

3

Dudhi had to be terminated because she committed a Category D violation. Three days later, Mses. Kirch and Knowles informed Ms. Dudhi orally and in writing that she was fired for leaving her work area without permission.

The employers also disciplined Ms. Hosten for leaving her work area. Specifically, Ms. Hosten was disqualified from consideration for a permanent medical assistant position, a position in which she had previously been eligible. Ms. Hosten was also no longer assigned to work at Temple Lung Center after her temporary assignment ended. According to Ms. Kirch, Ms. Hosten was the sole medical assistant working at Temple Lung Center after Ms. Dudhi was fired. The defendants permitted Ms. Hosten to complete her temporary work assignment so that Temple Lung Center would have medical assistant coverage during the time in which it took to replace Ms. Dudhi.

In August 2018, Ms. Dudhi brought suit against the defendants alleging violations of the Pregnancy Discrimination Act (PDA), Title VII of the Civil Rights Act of 1964, the Pennsylvania Human Relations Act (PHRA), and the Family Medical Leave Act (FMLA). In ruling on the defendants' motion to dismiss, the then-presiding judge[5] (1) dismissed with prejudice Ms. Dudhi's discrimination claim brought under the PDA; (2) dismissed without prejudice Ms. Dudhi's sex-based discrimination claims brought under Title VII and the PHRA to the extent she claimed the defendants' failure to accommodate; and (3) dismissed without prejudice Ms. Dudhi's FMLA retaliation claim. Ms. Dudhi's remaining race- and sex-based discrimination claims brought under Title VII and the PHRA survived the motion to dismiss stage. After Ms. Dudhi filed an amended complaint, the then-presiding judge subsequently authored a clarifying order stating "that any and all references contained in Dudhi's First Amended Civil Action Complaint to FMLA leave or

---

[5] This case has since been reassigned to the currently-presiding judge.

accommodations are purely factual allegations and shall not be construed as asserting such claims against Defendants." Clarifying Or. (Doc. No. 12).

The defendants now move for summary judgment to dismiss Ms. Dudhi's race- and sex-based discrimination claims. After holding oral argument, the Court (1) denied the defendants' motion for summary judgment as to their argument that Ms. Dudhi failed to properly name her employer as a defendant and (2) granted Ms. Dudhi leave to amend her complaint, if necessary, to properly name her employer as a defendant.[6] The Court reserved its resolution of the remainder of the defendants' motion for summary judgment to be addressed in this memorandum.

## I. Summary Judgment Standard

A court can grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might well affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). Under Rule 6 of the Federal Rules of Civil Procedure, the Court must view the evidence presented in the motion in the light most favorable to the non-moving party and draw all evidences in that party's favor. *Id.* However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

---

[6] The Court acknowledges that Ms. Dudhi may have incorrectly named the defendants instead of her actual employer, Temple University, as a defendant employer. Nonetheless, the Court refers to the defendants as Ms. Dudhi's employer for ease of reference.

The movant bears the initial responsibility for informing the Court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Where the non-moving party bears the burden of proof on a particular issue, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. After the moving party has met its initial burden, the non-moving party then must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(C). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## II. Sex-Based Adverse Action Discrimination Claims

Looking first at Ms. Dudhi's sex-based discrimination claims, Title VII prohibits employment discrimination based on an individual's sex. 42 U.S.C. § 2000e-2(a). Employment discrimination exists "whenever an employee's pregnancy is a motivating factor for the employer's adverse employment decision." *In re Carnegie Ctr. Assoc.*, 129 F.3d 290, 294 (3d Cir. 1997) (citing 42 U.S.C. § 2000e-2(m)). Because Ms. Dudhi's claims are based on her status as a woman who expresses milk for her newborn child, she may allege sex-based discrimination claims

6

under Title VII and the PHRA.[7] *Solomen v. Redwood Advisory Co.*, 183 F. Supp. 2d 748, 753-54 (E.D. Pa. 2002) (citing *Geraci v. Moody-Tottrup, Intern., Inc.*, 82 F.3d 578, 581 (3d Cir. 1996) (ensuring that pregnancy discrimination claims are brought by individuals who can reasonably claim to be affected by pregnancy, childbirth, or related medical conditions).

### A. *McDonnell Douglas* Burden-Shifting Framework

Because Ms. Dudhi relies on circumstantial evidence, her claims are subject to the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See In re Carnegie Ctr. Assoc.*, 129 F.3d at 294-95. Under this analysis, an employee must first establish her *prima facie* case. *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 364 (3d Cir. 2008). To establish a *prima facie* case of pregnancy-based discrimination under Title VII and the PHRA, a plaintiff must show that (1) "she is or was pregnant and that her employer knew she was pregnant"; (2) "she was qualified for her job"; (3) "she suffered an adverse employment decision"; and (4) "there is some nexus between her pregnancy and her employment termination that would permit a fact-finder to infer unlawful discrimination." *Id.* at 365; *see Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006). These elements "must not be applied woodenly, but must rather be tailored flexibly to fit the circumstances of each type of illegal discrimination." *Geraci*, 82 F.3d at 581. Indeed, "there is a low bar for establishing a *prima facie* case of employment discrimination." *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006); *see Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (cautioning that the requirement to establish a *prima facie* case "is not onerous" and poses "a burden easily met").

---

[7] The Third Court of Appeals construes Title VII and the PHRA consistently with each other. *See Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 n.5 (3d Cir. 2006).

If the employee establishes her *prima facie* case, the burden then shifts to the employer to proffer a legitimate, nondiscriminatory reason for its adverse employment action. *C.A.R.S.*, 527 F.3d at 364. This burden of production "is 'relatively light,' and the employer need only 'introduc[e] evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.'" *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)).

If the employer can articulate a legitimate, non-discriminatory reason, the burden shifts back to the employee who, to survive summary judgment, must show that the employer's reason was a pretext for discrimination. *C.A.R.S.*, 427 F.3d at 364. To create a genuine issue of material fact as to whether the defendants proffered reasons are pretextual, a plaintiff must "'point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Tomasso*, 445 F.3d at 706 (quoting *Fuentes*, 32 F.3d at 764). An employee can do so by "demonstrate[ing] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons." *Id.* (quoting *Fuentes*, 32 F.3d at 765) (alteration in original).

For the purposes of summary judgment, the parties assume that Ms. Dudhi can establish the first three prongs of her *prima facie* case. Further, the parties do not dispute that the employers have articulated a legitimate, non-discriminatory reason for firing Ms. Dudhi. Specifically, the defendants contend that because Ms. Dudhi was a permanent employee, she was subject to, and eventually fired because of, mandatory disciplinary repercussions that are inapplicable to

8

temporary employees.[8] Consequently, for the Court's determination are: (1) whether Ms. Dudhi created a triable issue with respect to the fourth prong of her *prima facie* case and (2) whether Ms. Dudhi sufficiently demonstrated pretext.

## B. Nexus Requirement

The Court first assesses whether Ms. Dudhi created a triable issue with respect to the nexus requirement required to set forth her *prima facie* case. To satisfy this requirement, Ms. Dudhi argues that the defendants treated a similarly situated, non-breastfeeding employee, Ms. Hosten, more favorably by disciplining Ms. Hosten less harshly in response to her identical rule-breaking conduct. *See McCormick v. Allegheny Valley Sch.*, No. 06-3332, 2008 WL 355617, at *9 (E.D. Pa. Feb. 6, 2008) (noting that a "[c]ommon circumstance[] giving rise to an inference of unlawful discrimination include[s] . . . the more favorable treatment of similarly situated colleagues outside the relevant class") (citation omitted). The employers argue that Ms. Dudhi's reliance on Ms. Hosten as a comparator fails as a matter of fact and law. Looking closely at the situations applicable to each person, the Court finds that no evidence would support a jury finding that Ms. Hosten is similarly situated to Ms. Dudhi.

### 1. Analysis for Whether an Alleged Comparator is Similarly-Situated to the Plaintiff

"While 'similarly situated' does not mean identically situated, the plaintiff must nevertheless be similar in 'all relevant respects.'" *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 222-23 (3d Cir. 2009) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997); *see also Collins v. Kimberly-Clark Pa., LLC*, 247 F. Supp. 3d 571, 589 (E.D. Pa. 2017) (noting that a

---

[8] *See also Dove v. Cmty. Educ. Ctrs., Inc.*, No. 12-4384, 2013 WL 6238015, at *12-13 (E.D. Pa. Dec. 2, 2013) (finding that employer met second step of *McDonnell Douglas* analysis where employee admitted to violating employer's written policy and employer deponents testified that such violation was a terminable offense).

9

plaintiff must show "that the relevant aspects of the plaintiff's employment situation are nearly identical to those of the co-workers that plaintiff alleges were treated more favorably") (quotation marks and citations omitted). In determining whether a plaintiff and her comparator are similar in "all relevant respects," courts often consider whether there is a showing that the two employees dealt with the same supervisors and decision-makers, were subject to the same standards, held the same job responsibilities, and "had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct of the employer's treatment of them." *Opsatnik*, 335 F. App'x at 223; *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011). Ultimately, "[w]hether a particular fact or circumstance is relevant for purposes of a 'similarly-situated' analysis must be determined by the context of each case." *Hobson v. St. Luke's Hosp. and Health Network*, 735 F. Supp. 2d 206, 214 (E.D. Pa. 2010) (citing *Houston v. Easton Area Sch. Dist.*, 355 F. App'x 651, 654 (3d Cir. 2009)).

Determining whether comparators are similarly situated is generally a question of fact for the jury to decide. *Abdul-Latif v. Cty. of Lancaster*, 990 F. Supp. 2d 517, 526 (E.D. Pa. 2014) (citations omitted). Nonetheless, the Court may appropriately grant summary judgment if the evidence could not support a jury finding that the plaintiff and comparator were similarly situated. *Id.* (citing *Opsatnik*, 335 F. App'x at 223-24).

The Court acknowledges that some of these factors might support the inference that Mses. Dudhi and Hosten are similarly situated. For instance, Mses. Dudhi and Hosten were both medical assistants working at the same facility. They also committed precisely the same infraction— leaving their work areas while caring for patients. However, the similarly-situated analysis applied here must turn on whether Ms. Hosten's status as a *temporary* worker renders her not similarly situated to Ms. Dudhi, a *permanent* employee. The Court determines that it does.

10

Cases from this district support the defense argument that the permanent-temporary distinction "alone, on its face, precludes any appropriate, apples-to-apples comparison between [Ms.] Dudhi and Ms. Hosten." Pl.'s Reply at 7 (Doc. No. 26). *See, e.g., Trent v. Test Am., Inc.*, No. 10-1290, 2013 WL 1809236, at *7 (E.D. Pa. Apr. 30, 2013), *aff'd*, 559 F. App'x 180 (3d Cir. 2014) ("[P]laintiff has not set forth evidence to suggest that similarly situated nonmembers of her protected class, e.g., temporary laboratory analysts who are not African-American, were treated more favorably than she was."); *George v. Wilbur Chocolate Co.*, No. 08-3893, 2010 WL 1754477, at *4 (E.D. Pa. Apr. 29, 2010), *aff'd*, 425 F. App'x 170 (3d Cir. 2011) (noting that the alleged comparator's permanent employment status "refutes any argument" that the temporarily employed plaintiff and the alleged comparator were similarly situated). *See also Johnson v. Diamond State Port Corp.*, 50 F. App'x 554, 559 (3d Cir. 2002) ("An employee such as Johnson who requests *temporary* light-duty work is not similarly-situated to an employee such as Peltz who applied for and obtained *permanent* light-duty work."); *Prentice v. OfficeMax N. Am.*, No. 9-5, 2012 WL 898323, at *8 (D.V.I. Mar. 15, 2012) ("[T]he temporary workers—being temporary— are not appropriate comparators" to permanent employees.).

Recognizing that the similarly-situated analysis should take into consideration the context of each case, *Hobson*, 735 F. Supp. 2d at 214, the Court next inquires whether the permanent-temporary distinction is particularly notable in this specific employment situation. Indeed, other courts have focused on whether permanent employees and temporary workers are held to differing standards or other mitigating factors to distinguish the manner in which an employer treated them. *See, e.g., George v. Leavitt*, 407 F.3d 405, 415 (D.C. Cir. 2005) (holding that "probationary employees and permanent employees are not similarly situated" because federal regulations permitted different standards for terminating probationary and permanent employees); *Monk v.*

11

*Potter*, 723 F. Supp. 2d 860, 877 (E.D. Va. 2010) (finding a permanent mail carrier to not be similarly situated to temporary mail carriers when presented "no additional evidence, such as job descriptions or information about the line of supervision or workplace rules governing temporary employees").

Here, Work Rule D.5 prohibits employees to leave their work area without permission while caring for a patient. In her declaration, Ms. Kirch explained that permanent employees are subject to the work rules and their prescribed disciplinary actions. Conversely, although temporary workers are expected to follow the work rules, they are not subject to the same disciplinary actions. Leaving an assigned work area without permission is a Category D violation. Such a violation requires the mandatory termination for only an employee subject to the disciplinary actions prescribed, *i.e.* permanent employees. Ms. Dudhi fails to set forth any evidence rebutting the defendants' evidence that only permanent workers are subject to the disciplinary actions prescribed.[9]

The evidence shows that Ms. Dudhi's status as a permanent employee and Ms. Hosten's status as a temporary worker demonstrate a meaningful difference between their employment situations. No evidence supports a fact-finding that Mses. Dudhi and Hosten are similarly situated. Accordingly, Ms. Dudhi cannot rely on her comparator evidence to support her *prima facie* case. Because Ms. Dudhi exclusively relies on such evidence, she fails to meet the burden typically "easily met" to support an inference to establish her *prima facie* case.[10] *Burdine*, 450 U.S. at 253.

---

[9]  Moreover, the permanent-temporary distinction is bolstered by the differing manner in which the defendants ended Ms. Hosten's employment. Because of Ms. Hosten's violation of the work rule at issue, the defendants merely removed Ms. Hosten from consideration for a permanent medical assistant position, a position in which she had previously been a candidate. Ms. Hosten then was simply not reassigned to work at Temple Lung Center after her temporary assignment concluded.

[10]  The defendants alternatively argue that Mses. Dudhi and Hosten are not similarly situated because of their differing employment disciplinary records. Ms. Hosten had no disciplinary record whereas Ms.

*2. Ms. Dudhi's Additional Arguments Concerning Disputes of Material Facts*

Ms. Dudhi argues that the two following alleged disputes of material fact preclude a grant of summary judgment: (1) whether Ms. Dudhi requested and was denied an accommodation and (2) where Ms. Dudhi went during the time in which she left her work area.

First, Ms. Dudhi argues that whether she asked or failed to ask for an accommodation to express milk while at work is a disputed material fact. Indeed, the defendants dispute whether Ms. Dudhi requested an accommodation to express milk while at work. For purposes of summary judgment, however, the defendants assume that Ms. Dudhi requested and was denied an accommodation. As the defendants point out, such a fact is immaterial because it fails to address or rectify Ms. Dudhi's difficulties in establishing the fourth prong of her *prima facie* case.

To the extent Ms. Dudhi attempts to argue that the defendants' alleged failure to provide her an accommodation is evidence which, on its own, establishes an inference that she could satisfy the nexus requirement, such an argument fails. *See* Pl.'s Resp. at 2 (Doc. No. 25) ("If Plaintiff was terminated because she was taking a needed break to express milk, such a break should be protected from adverse action taken by Defendants and thus the termination of the Plaintiff's employment constitutes sex discrimination under Title VII."). To be clear, "Title VII is not an accommodation statute," *Lampkins v. Mitra QSR KNE, LLC*, 383 F. Supp. 3d 315, 328, 335 (D. Del. 2019). Nor does Title VII "require preferential treatment for employees." *C.A.R.S.*, 527 F.3d

---

Dudhi had been disciplined twice before. Courts have held co-workers with differing disciplinary records to not be similarly situated. *See, e.g., Opsatinik*, 335 F. App'x at 222-23 (affirming district court's determination that employees with no history of prior discipline were not similarly situated to a plaintiff who had been disciplined multiple times). Nonetheless, the context of the individual case dictates the relevance of a particular fact for purposes of determining whether comparators are similarly situated. *Hobson*, 735 F. Supp. 2d at 214. The record shows that the defendants consider the first infraction of the work rule at issue to mandate a permanent employee's termination, without respect to their disciplinary record. In this case, the medical assistants' distinguishable disciplinary records do not necessarily suggest that a reasonable fact-finder would never consider the medical assistants to be similarly situated on that basis.

13

at 364; *see also Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 222 (2015) (noting that Title VII, as amended by the PDA, did not "grant pregnant workers an unconditional most-favored-nation status"). "Instead, it mandates that employers treat pregnant employees the same as non-pregnant employees who are similarly situated with respect to their ability to work." *C.A.R.S.*, 527 F.3d at 364.

Even if Ms. Dudhi went to her car to express milk after the defendants allegedly refused to accommodate her, such a fact does not establish Title VII or PHRA claims. Ms. Dudhi's claims do not turn on whether she, as a breastfeeding mother, requested and was denied an accommodation. Rather, they turn on whether similarly situated, non-breastfeeding employees were treated more favorably than she was. *See Hicks v. City of Tuscaloosa, Alabama*, 870 F.3d 1253, 1260 (11th Cir. 2017) ("Taking adverse actions based on [a] woman's breastfeeding is prohibited by the PDA but employers are not required to give special accommodations to breastfeeding mothers."). As noted, Ms. Dudhi fails to set forth any evidence establishing an inference that similarly situated individuals outside of her protected class received more favorable treatment. The existence or absence of Ms. Dudhi's accommodation request does not rectify her case's shortcomings. Therefore, such a fact is immaterial.

Second, Ms. Dudhi argues that where she was located after leaving her work area is a disputed material fact. The defendants argue that even when accepting as true for the purposes of summary judgment that Ms. Dudhi was in her car, such a fact again asserts nothing to establish Ms. Dudhi's *prima facie* case. Ms. Dudhi's own briefing curiously deemphasizes the materiality of this distinction. Ms. Dudhi asserts that despite Mses. Dudhi and Hosten committed "identical infraction[s,]" only Ms. Dudhi was immediately fired. Pl.'s Resp. at 20 (Doc. No. 25). Ms. Dudhi concedes that this is true "even assuming arguendo that [she] was at Wawa as Ms. Knowles

14

testified instead of breastfeeding in her car." *Id.* Apparently in agreement with both parties, the Court considers Mses. Dudhi's location while in violation of the work rule at issue to be an immaterial fact.

Therefore, no genuine disputes of material fact warrant the fact-finding of a jury or preclude summary judgment in favor of the defendants.

### 3. Conclusion

Despite the fact that establishing a *prima facie* case is typically a burden easily met, Ms. Dudhi fails to put forth any sufficient evidence to infer that the nexus requirement can be satisfied. Therefore, the Court grants summary judgment in favor of the defendants on Ms. Dudhi's sex-based discrimination claims. Because Ms. Dudhi failed to put forth evidence to support the inference of a *prima facie* case, the Court need not address whether Ms. Dudhi sufficiently demonstrated pretext. Even so, the Court briefly considers the parties' arguments concerning the pretext step of the *McDonnell Douglas* analysis for the sake of thoroughness.

## C. Pretext

Because Ms. Dudhi relies on the same insufficient comparator evidence she attempts to use to support her *prima facie* case at the pretext stage,[11] she also fails to set forth evidence establishing an inference of pretext. Even so, two additional topics are worth mentioning.

First, Ms. Dudhi never addressed the fact that there is no evidence demonstrating that the ultimate decision-maker, University Director of Labor Relations, Deirdre Culbreath-Walton, actually knew that Ms. Dudhi went on parental leave or allegedly requested an accommodation related to her breastfeeding. Indeed, Ms. Dudhi insists that Ms. Culbreath-Walton "was never told

---

[11] *See C.A.R.S.*, 527 F.3d at 371 (noting "that the *prima facie* case and pretext inquiries often overlap[,]" and the *McDonnell Douglas* framework does not require courts "to ration the evidence between one stage or the other").

15

that Ms. Dudhi was on a break pumping breast milk." Pl.'s Resp. at ¶ 35 (Doc. No. 25); *see also id.* at ¶ 40. Ms. Dudhi's insistence in this regard further cuts against her argument that the decision to terminate her was based on discriminatory animus rather than a legitimate, non-discriminatory reason.

Second, the defendants argue that, in addition to the work rules' prescribed disciplinary actions requiring only Ms. Dudhi's termination, they also had a legitimate business reason to treat Ms. Hosten's infraction differently. After Ms. Dudhi's mandated firing, Ms. Hosten was the sole remaining medical assistant working at Temple Lung Center. According to Ms. Kirch, the defendants permitted Ms. Hosten to complete her temporary work assignment so that Temple Lung Center had at least one medical assistant during the time in which it took to replace Ms. Dudhi. In the absence of evidence of discriminatory animus, "[i]t is not the Court's role to second-guess business decisions where there is no evidence of discriminatory animus." *Andersen v. Mack Trucks, Inc.*, 118 F. Supp. 3d 723, 747 (E.D. Pa. 2015); *see also Smith v. Thomas Jefferson Univ.*, No. 05-2834, 2006 WL 1887984, at *5 (E.D. Pa. June 29, 2006) ("[A] court does not sit as a super-personnel department that reexamines an entity's business decisions."). Ms. Dudhi fails to cite any evidence in which the Court can infer a weakness or inconsistency in the defendants' articulated, non-discriminatory reasoning.

### III. Race-Based Adverse Action Discrimination Claims

The Court next addresses Ms. Dudhi's assertion that she was fired from her position due to racial discrimination. Race-based claims based on circumstantial evidence are also analyzed under the *McDonnell Douglas* burden-shifting framework. *See Wilson v. Lock Haven Univ.*, 474 F. App'x 74, 75 (3d Cir. 2012). Similarly to establishing her sex-based discrimination *prima facie* case, Ms. Dudhi's racial discrimination *prima facie* case requires a showing that: "(1) the plaintiff

16

belongs to a protected class; (2) the plaintiff was qualified for the position; (3) the plaintiff was subject to an adverse employment action despite being qualified; and (4) the adverse employment action was made under circumstances raising an inference of discriminatory action." *Id.* (citing *Sarullo v. United States Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003)). Providing evidence in support of the nexus requirement again proves difficult for Ms. Dudhi.

Ms. Dudhi's race-based *prima facie* case was initially based on her allegation that Ms. Hosten, her alleged comparator, is Caucasian. It is now undisputed that Ms. Hosten is actually African-American. Because Ms. Hosten is also a member of the protected class, this comparator evidence fails to establish Ms. Dudhi's *prima facie* case.[12]

After acknowledging at her deposition that no evidence exists to support her racial discrimination claims, Ms. Dudhi subsequently asserted that two other employees received more favorable treatment than she did due to race-based discrimination. Ms. Dudhi testified that one alleged comparator, whose race is still not reflected in the record, was given frequent breaks to pump breast milk. In her declaration, this employee stated that she never expressed milk at work and was employed as an administrative specialist, not a medical assistant. Moreover, Ms. Dudhi could not provide any detail about the more favorable treatment her final alleged comparator, an administrative specialist, received. At the very least, because these employees' job responsibilities completely differ from Ms. Dudhi's duties, they too are not similarly situated to Ms. Dudhi. Therefore, this comparator evidence is equally insufficient to support her *prima facie* case.

During Ms. Dudhi's deposition, she also testified that "inappropriate comments" were made, namely including Ms. Knowles' "questions about [Ms. Dudhi's] hair." Dudhi Dep. at 75:12-77:21 (Doc. No. 22-2). Ms. Dudhi failed to provide any specifics concerning these

---

[12] As noted, Ms. Hosten is also not similarly situated to Ms. Dudhi.

17

comments. Even if these comments relate to Ms. Dudhi's race—which is unclear from the record—they, at most, constitute merely "stray remarks, which, standing alone, are inadequate to support an inference of discrimination." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 521 (3d Cir. 1997).

Despite Ms. Dudhi's testimony that she refuses to withdraw her race-based discrimination claim, Ms. Dudhi's attorney later confirmed at oral argument that Ms. Dudhi does not oppose summary judgment regarding her racial discrimination claims. Taking into consideration the insufficiency of Ms. Dudhi's evidence and the fact that she does not oppose summary judgment, the Court grants summary judgment in favor of the defendants for Ms. Dudhi's racial discrimination claims.

## CONCLUSION

For the foregoing reasons, the Court grants summary judgment in favor of the defendants regarding Ms. Dudhi's race- and sex-based employment discrimination claims. Therefore, none of Ms. Dudhi's claims remain. An appropriate order follows.

BY THE COURT:

/s/ Gene E.K. Pratter

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE